**In re RICHMOND METAL FINISHERS, INC., Debtor.**

**Bankruptcy No. 83–01047–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 1, 1983.

**522**

James R. Sheeran, Richmond, Va., for debtor.

BLACKWELL N. SHELLEY, Bankruptcy Judge.

## MEMORANDUM OPINION

This matter came before the Court on the debtor's motion to reject an executory contract. After proper notice this Court held a hearing on the debtor's motion. After careful consideration of the evidence presented and the briefs submitted by the parties, this Court renders the following opinion.

## STATEMENT OF FACTS

On July 8, 1982, the debtor, Richmond Metal Finishers, Inc. ("RMF") and Lubrizol Enterprises, Inc. ("Lubrizol") executed a contract which is referred to by the parties as "Technology License Agreement" (the agreement). By the terms of the contract, RMF grants to Lubrizol a nonexclusive license to specified technology owned by RMF. RMF's other obligations under the agreement include: (1) notifying Lubrizol of any patent infringement suit and defending such suit; (2) notifying Lubrizol if RMF intends to make any other use or license of the technology; (3) defending Lubrizol in any patent infringement case brought against Lubrizol for their use of the technology under the license agreement; and (4) holding Lubrizol harmless and indemnifying them from certain loss or liability specified under the contract. In return for the license and RMF's other undertakings, Lubrizol, among other obligations contained in the contract, agreed to pay a royalty to RMF for its use of the technology, and to cancel some existing indebtedness owed to Lubrizol by RMF.

On August 16, 1983, RMF filed a petition pursuant to Chapter 11 of the Bankruptcy Code in this Court. The debtor in possession, pursuant to § 365 of the Code, brought this action to reject the contract. A hearing on the debtor's motion to reject was held on September 7, 1983. Lubrizol appeared by counsel and opposed the debtor's motion.

In support of its motion, RMF's president, W.W. Robinson testified. He stated that RMF had received no payments from Lubrizol under the agreement and had no assurance that future royalties would be forthcoming under that contract. Mr. Robinson testified further that the technology subject to the nonexclusive license agreement is RMF's principal asset and that attempts to sell or license the technology to other purchasers is hindered by the existing contract with Lubrizol even though non-exclusive. Finally, he stated that to fund properly RMF's Chapter 11 plan the sound business decision is to reject the license agreement with Lubrizol.

## CONCLUSIONS OF LAW

Under the Bankruptcy Code the trustee may assume or reject executory contracts or unexpired leases provided the court approves such rejection or assumption. 11 U.S.C. § 365. Counsel for the debtor in possession, possessing the same rights as a trustee pursuant to 11 U.S.C. § 1107, has sought such court approval. Said § 365 provides in pertinent part:

> (a) ... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> .    .    .    .    .
>
> (d)(2) In a case under Chapter ... 11 ... of the title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before confirmation of a plan ....

This Court, therefore, is faced with two issues, both which if resolved in favor of the

debtor in possession will lead this Court to grant the relief requested—i.e. the debtor may reject the license agreement with Lubrizol. First, § 365 only permits the court to approve rejection or assumption of executory contracts, thus if the license agreement before the Court is not an executory contract, this Court will not approve rejection. Second, if the contract sought to be rejected is executory, this Court must decide whether to approve such rejection and by what standards it should consider such approval.

*Is the Lubrizol agreement an executory contract?*

Lubrizol argues that the execution of the license agreement and the delivery to Lubrizol by RMF of certain manuals constitute all the debtor's (RMF) obligations and because these have been performed the contract is not executory as to the debtor. In addition, Lubrizol contends that all of their obligations have been performed fully or substantially thereby leaving no performance on the part of Lubrizol. Absent performance due by either party, Lubrizol argues that the contract is not executory and therefore cannot be rejected.

RMF, the debtor, on the other hand argues that substantial performance by both parties remains and, therefore, the contract is executory and may be rejected if this Court so approves. Specifically, RMF alleges that the following performance is required still:

1) RMF must pay Lubrizol $10,000.00.

2) RMF must advise Lubrizol of any patent infringement case and must defend any such case filed against Lubrizol.

3) RMF must advise Lubrizol of any other use of the technology, which is subject of the License Agreement, and accept a reduced royalty because of such additional use.

4) RMF must indemnify and hold harmless Lubrizol from loss or liability under the License Agreement.

■ Unfortunately, the Code does not define executory contract. The Legislative History to § 365, however, does provide:

... Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303. Professor Countryman and others have attempted to add clarity to the problem of determining whether a contract is executory. *See, e.g.,* Countryman, *Executory Contracts in Bankruptcy,* 57 Minn.L.Rev. 439 (1973) (Part I), 58 Minn.L.Rev. 479 (1974) (Part II). What appears clear by the applicable case law is that each court must undertake an independent analysis of the particular contract at hand. No simple formula exists to be applied in every situation, rather each contract must be interpreted in light of the existing guidelines but also with an eye towards furthering the policies of the Bankruptcy Code. The United States Court of Appeals for the Sixth Circuit has stated:

The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

*In re Jolly,* 574 F.2d 349, 351 (6th Cir.1978). In order to aid a debtor in its rehabilitation efforts, bankruptcy courts apply standards that are more flexible than those under contract law. *See, In re Rovine,* 6 B.R. 661, 664 (Bkrtcy.W.D.Tenn.1980).

■ Without adopting a specific test, and with an eye towards prior case law, the legislative history, Professor Countryman's approach and the policies underlying the Bankruptcy Code, this Court is satisfied that the subject contract is executory if both Lubrizol and RMF have some continu-

ing obligation that if unperformed would be a material breach of the contract.

At the very least, Lubrizol may be obligated to pay RMF a royalty for its use of RMF's technology under the license agreement. This obligation exists for 16 years and constitutes a substantial part of the consideration given by Lubrizol to procure the license agreement. Consequently, this Court holds that Lubrizol has contract obligations still to be performed. Moreover, Lubrizol's failure to pay royalties as they may fall due would constitute a material breach of the agreement.

Lubrizol's obligation is very similar to Fenix's obligation in *In re Select-A-Seat,* 625 F.2d 290 (9th Cir.1980) where Fenix, like Lubrizol here, was challenging the debtor's motion to reject an executory contract. There Fenix was obligated to pay an initial fee plus five percent of its annual net return from use of the debtor's computer software. The United States Court of Appeals for the Ninth Circuit stated in *Select-A-Seat* that "if Fenix failed to make these annual payments, that failure would constitute a material breach of the contract, justifying revocation of the exclusive license." 625 F.2d at 292.

Admittedly, *Select-A-Seat* involved an *exclusive* license agreement, however, the court in *Select-A-Seat* found Fenix, the licensee, to have a continuing obligation without regard to the issue of the agreement's exclusive nature. In other words, Fenix's failure to make annual royalty payments would constitute a material breach even if the license agreement in *Select-A-Seat* was nonexclusive. *See id.* Similarly, the Bankruptcy Court for the Western District of Tennessee held that an obligation to make royalty payments under a franchise agreement made the contract executory as to the party objecting to the attempted rejection. *In re Rovine Corp.,* 6 B.R. 661, 665 (Bkrtcy.1980). The court stated further that such franchise agreements are in many respects, similar to a license. *Id.*

Having held that the license agreement provides for a continuing obligation as to Lubrizol and that case law adequately sup-

ports this holding, this Court will also determine whether RMF owes some continuing and material obligation before holding the contract to be executory for purposes of 11 U.S.C. § 365. Lubrizol argues that RMF has performed fully its obligations under the license agreement by executing the agreement and by delivering certain manuals and other materials to Lubrizol. RMF, however, has produced evidence demonstrating that they have certain continuing obligations under the agreement.

Testimony by the president of the debtor and the terms of the agreement itself demonstrate that RMF owes Lubrizol some continuing, even if contingent, obligations. First, RMF must advise Lubrizol of any challenge to the patent rights that are subject to the agreement. Second, RMF must defend, at its expense, any patent infringement action brought against Lubrizol involving the subject technology. Finally, RMF must hold Lubrizol harmless and indemnify them for certain loss or liability specified under the contract. These obligations, although contingent, are sufficient to make the contract executory as to RMF. Moreover, these obligations are not *de minimus.* They are important aspects of the consideration received by Lubrizol, thus RMF's failure to honor them would constitute a material breach of the license agreement.

Courts have held that merely because an obligation is contingent it does not prevent the contract from being executory for purposes of § 365. *In re Smith Jones, Inc.,* 26 B.R. 289, 292 (Bkrtcy.D.Minn.1982). If, as Lubrizol alleges, all obligations of the parties have been performed except for the payment of money by Lubrizol, the contract would not be executory. However, even obligations that may never arise may form the basis of classifying a contract as executory. The court in *Smith Jones* held that the debtor's express warranty obligations fell within the definition of "executory contracts" and satisfied the requirement that an executory contract have "bilateral involvement." *Id.* Moreover, the obligation to defend a license from patent infringe-

ment suits and to indemnify said licensee from infringement claims was enumerated specifically by the Bankruptcy Court for the Southern District of New York in *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 117 (Bkrtcy.S.D.N.Y.1982) as an obligation sufficient to make a contract executory.

Finally, Professor Countryman's discussion of executory contracts adds to the aforementioned authorities supporting this Court's determination that the license agreement between Lubrizol and RMF is an executory contract. Countryman states:

> The usual patent license, by which the patentee—licensor authorizes the licensee to exercise some part of the patentee's exclusive right to make, use and vend the patented item in return for payment of royalties, ordinarily takes the form of an executory contract.

Countryman, *Executory Contracts in Bankruptcy,* 58 Minn.L.Rev. 479, 501 (1974). Therefore, although RMF did not have a final patent on the subject technology, the following conclusions can be drawn: the usual patent license is an executory contract and even though there is no implied warranty of a valid patent in this matter, RMF made express undertakings in the license agreement that constitute a continuing, contractual obligation.

*Should the proposed rejection be approved?*

Having held the license agreement to be an executory contract, this Court must now decide whether to approve the debtor in possession's proposed rejection of the contract.

The Code itself provides no express guidelines for this Court to apply in determining whether to permit a debtor to reject an executory contract. The Code provides only that court approval is required. Under the old Bankruptcy Act and some cases under the new Code, courts have said that the contract sought to be rejected must be "burdensome" to the debtor for the court to approve rejection. Another approach involves collective bargaining agreements and it examines whether in attempting to reject a collective bargaining agreement the court

should undertake an "equitable balancing" of the relative benefits and detriments to the debtor and other party affected by any rejection of the contract. Finally, the more modern and preferable approach is the business judgment test which provides that rejection should be approved if it will benefit the estate.

This Court is satisfied that in the instant case, which does not involve a collective bargaining agreement, the appropriate test is the "business judgment" approach. It has been followed by numerous Circuit, District, and Bankruptcy Courts. *See e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943); *Borman's Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187, 189 (6th Cir.1983); *In re Minges,* 602 F.2d 38, 43 (2nd Cir.1979); *Matter of Tilco,* 558 F.2d 1369, 1372 (10th Cir.1977); *In re Chi-Feng Huang,* 23 B.R. 798, 800 (Bkrtcy. 9th Cir.1982); *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 118 (Bkrtcy.S.D.N.Y.1982); *In re Sombrero Reef Club, Inc.,* 18 B.R. 612, 617 (Bkrtcy.S. D.Fla.1982); *In re Lafayette Radio Electronics Corp.,* 8 B.R. 528, 533 (Bkrtcy.E.D.N. Y.1981).

■ Under the business judgment test a court should approve the debtor's proposed rejection if such rejection will benefit the estate. *In re Minges,* 602 F.2d at 43; *In re Sombrero Reef Club, Inc.,* 18 B.R. at 617. Some courts have suggested that the Court's role in this determination is minimal, and that rejection should be denied only where the trustee's or debtor in possession's decision is clearly erroneous. *In re Sombrero Reef Club, Inc.,* 18 B.R. at 617; *see also, In re Summit Land Co.,* 13 B.R. 310, 315 (Bkrtcy.D.Utah 1981). Similar to the matter before this Court, *Sombrero Reef* involved a debtor's motion to reject contracts that adversely affected its principal asset. Although this Court holds that the debtor in possession's decision to reject is not clearly erroneous, as evidenced by the discussion below, it will nonetheless apply the business judgment test to the particular

**526**

facts at hand to determine whether the rejection should be approved.

Counsel for Lubrizol argues that the contract should not be rejected because it does not burden the debtor and further that rather than burden the debtor, the contract represents a future stream of income and, therefore, rejection will not benefit the estate. As to Lubrizol's first argument, this Court has noted earlier that the burdensome test is not the appropriate one to be applied here. In fact, courts have held consistently that rejection may and should be approved where a contract, while not actually burdensome to the debtor nonetheless prevents the debtor from entering a more advantageous arrangement. *In re Smith Jones, Inc.,* 26 B.R. at 293.

 Mr. Robinson testified for RMF, as its president, that the technology that was the subject of the license agreement with Lubrizol was the debtor's principal asset. He testified further that in endeavoring to fund the debtor's Chapter 11 plan he was attempting to sell or license the technology, but that the existing nonexclusive agreement hindered those efforts. He stated that interested purchasers were concerned with the existing license arrangement with Lubrizol and would be more likely to purchase rights to the technology if RMF was free of its obligations to Lubrizol and the technology was not encumbered by an outstanding license agreement. Finally, Mr. Robinson stated that he believed it was an exercise of good business judgment to reject the contract.

Mr. Robinson's testimony was uncontradicted. Further, Lubrizol did not demonstrate that any royalty payments had been made or would be forthcoming in the future. Consequently, this Court holds that rejection of the license agreement will benefit the estate and aid the debtor's efforts at reorganization because such rejection will permit RMF to substitute the existing license arrangement with a new one that is more advantageous to the estate and the creditors of RMF. Such benefit to the estate and unsecured creditors is the court's primary concern in applying the business judgment test. *In re Chi-Feng Huang,* 23 B.R. 798, 801 (Bkrtcy. 9th Cir.1982). Whether one party is injured or rejection is "unfair" to a party is an inappropriate analysis. *Id.* at 800. The policies of the Bankruptcy Code encourage the Chapter 11 debtor to substitute marginal or burdensome arrangements for those that will benefit the estate. *Group of Institutional Investors v. Chicago Milwaukee, St. Paul & Pacific R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943). *In re Summit Land Co.,* 13 B.R. 310, 315 (Bkrtcy.D.Utah 1981).

The Court's holding, however, does not leave Lubrizol without a remedy. Lubrizol has a claim for breach of contract. Like other prepetition creditors Lubrizol has the right to file timely a proof of claim and share in any distribution under the Chapter 11 plan, if confirmed, or under Chapter 7 liquidation, if this proceeding is later converted.

The "business judgment" test being satisfied, this Court should grant and approve the debtor's motion to reject the executory contract between itself (RMF) and Lubrizol.

An appropriate Order will issue.